CHARLES GENDLER & CO., INC. PLAINTIFF-RESPONDENT, v. TELECOM EQUIPMENT CORPORATION, DEFENDANT, AND NIPPON ELECTRIC CO., LTD., DEFENDANT-APPELLANT.

Argued January 23, 1986—Decided May 29, 1986.

461

462

*Paul J. Linker* argued the cause for appellant (*Robinson, Wayne, Levin, Riccio & LaSala,* attorneys).

*Stephen W. Gruhin* argued the cause for respondent (*Gruhin & Gruhin,* attorneys).

The opinion of the Court was delivered by

POLLOCK, Justice.

This appeal questions whether an international corporation is subject to the personal jurisdiction of the New Jersey courts in an action for breach of contract arising from the sale of an

allegedly defective telephone system. The issue is raised by defendant Nippon Electric Co., Ltd. (Nippon), a Japanese corporation with its principal place of business in Tokyo. Nippon has a wholly-owned subsidiary, NEC America, Inc., which is authorized to do business in New Jersey and in turn wholly owns another subsidiary, NEC Telephones, Inc. Both NEC America and NEC Telephones are New York corporations.

Nippon manufactures telephone equipment and other products in Japan and sells them to NEC America, which then distributes the products to NEC Telephones. In this case, NEC Telephones sold Nippon telephone equipment to Telecom Equipment Corporation, a New Jersey corporation with its principal place of business in Long Island, New York. Telecom then sold the equipment to plaintiff, Charles Gendler & Co., Inc. (Gendler), a New York corporation authorized to do business in New Jersey, for installation at Gendler's premises in Belleville, New Jersey. At oral argument, Nippon acknowledged that the sale of its telephones to Gendler is not an isolated transaction and that other Nippon products, including computers and telecommunications equipment, may have been sold in New Jersey.

In the Gendler contract, which provides that it is to be construed according to New York law, Telecom warranted "the Equipment against defective parts of [sic] workmanship for a period of one year from the date of its installation." Alleging that the equipment did not perform as warranted, Gendler sued Telecom and Nippon, but not NEC America or NEC Telephones. Gendler settled with Telecom, but Nippon contends that it is not subject to the jurisdiction of the New Jersey courts.

The Law Division granted Nippon's motion to dismiss, finding that Nippon did not have sufficient contacts to subject it to the court's jurisdiction, but the Appellate Division reversed, 199 *N.J.Super.* 227 (1985). We granted certification, 102 *N.J.* 318 (1985), and now reverse the judgment of the Appellate Division and remand the matter to the Law Division for the development of a more complete record.

-I-

In support of its motion to dismiss, Nippon submitted a certification by the general manager of its 1st North America Division reciting, in part, that Nippon manufactures "telephone equipment for sale to companies throughout the world." Gendler did not submit any affidavit or other proof in opposition to Nippon's motion to dismiss. At oral argument, however, Gendler's counsel informed us that before the matter was submitted to the Law Division, he had served on Nippon's counsel a Notice to Produce documents relating to the amenability of Nippon to the jurisdiction of the New Jersey courts. Nippon did not provide the requested information, and Gendler did not enforce the request. As a result, the record is barren of any information about the extent to which Nippon purposefully availed itself of the opportunity to sell its telephones in New Jersey.

In granting Nippon's motion to dismiss, the Law Division observed that Nippon is not authorized to do business, and has not conducted any business, in New Jersey. No Nippon officers, agents, or representatives are located here. Nippon has not advertised for or solicited business in New Jersey, and it does not have a telephone listing in the State. Furthermore, Nippon did not contract with Gendler for the sale of its telephone equipment and has not visited Gendler's plant. Nippon has not received any direct income from Gendler or any other New Jersey residents, and nothing indicated that Nippon was aware of the system for the distribution of its telephone equipment. As a result, the Law Division concluded that Nippon lacked sufficient minimum contacts to subject it to the jurisdiction of the New Jersey courts.

In reversing, the Appellate Division adopted the stream-of-commerce theory, under which a foreign manufacturer subjects itself to jurisdiction "whenever its products are deliberately marketed into the 'stream of commerce' notwithstanding the presence of independent corporations in the chain of distribu-

tion." 199 *N.J.Super.* at 235. The Appellate Division found that Nippon's two subsidiaries obviously distributed Nippon's products in the northeastern United States and that, in effect, they were the merchandising arms of Nippon. *Id.* at 229–30. Deliberate sales efforts of Nippon's distributors resulted in the sale of Nippon's products, including its telephone equipment, in New Jersey. Because Nippon manufactured an allegedly defective product that was sold through its distribution chain to a corporation located in New Jersey, Nippon was subject to the jurisdiction of the New Jersey courts. As a result, the Appellate Division reversed and remanded the matter to the Law Division.

–II–

■■ A state court's assertion of personal jurisdiction over a defendant must comport with the due-process requirement of the fourteenth amendment. Rule 4:4–4, this state's equivalent of a "long-arm statute," permits service of process on non-resident defendants "consistent with due process of law." Consequently, "we will allow out-of-state service to the uttermost limits permitted by the United States Constitution." *Avdel Corp. v. Mecure,* 58 *N.J.* 264, 268 (1971).

■ Originally the United States Supreme Court construed the due-process clause to require the personal presence of the defendant in the jurisdiction. *Pennoyer v. Neff,* 5 *Otto* 714, 95 *U.S.* 714, 24 *L.Ed.* 565 (1878). In this century, recognizing that the requirement of corporate presence did not comport with the reality that corporations frequently conduct business across state lines, the United States Supreme Court ruled that:

> due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'
>
> [*International Shoe Co. v. Washington,* 326 *U.S.* 310, 316, 66 *S.Ct.* 154, 158, 90 *L.Ed.* 95, 102 (1945) (quoting *Milliken v. Meyer,* 311 *U.S.* 457, 463, 61 *S.Ct.* 339, 343, 85 *L.Ed.* 278, 283 (1940)).]

The purpose of the minimum-contacts test is to insure the fairness and reasonableness of requiring a non-resident to defend a lawsuit in the forum state. *Id.* at 317, 66 *S.Ct.* at 158, 90 *L.Ed.* at 102. Given this focus, the jurisdictional test is not to be applied mechanically. Rather, "the quality and nature of the (defendant's) activity in relation to the fair and orderly administration of the laws" must be examined on a case-by-case basis to determine if the minimum-contacts standard is satisfied. *Id.* at 319, 66 *S.Ct.* at 159–60, 90 *L.Ed.* at 103–04; *see, e.g., Kulko v. Superior Court of California,* 436 *U.S.* 84, 92, 98 *S.Ct.* 1690, 1697, 56 *L.Ed.*2d 132, 141 (1978).

■ Basically, the due-process limitation protects the defendant's liberty interest in not being subject to the entry of a judgment in a jurisdiction with which the defendant does not have sufficient minimum contacts. *Burger King Corp. v. Rudzewicz,* —— *U.S.* ——, ——, 105 *S.Ct.* 2174, 2181–82, 85 *L.Ed.*2d 528, 540 (1985). By precluding state courts from unfairly requiring non-residents to defend themselves, the due-process clause also insures that a state's grasp does not exceed its jurisdictional reach. Nonetheless, the primary purpose of the restriction on state court jurisdiction remains to preserve the defendant's liberty interest. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 *U.S.* 694, 702 n. 10, 102 *S.Ct.* 2099, 2104 n. 10, 72 *L.Ed.*2d 492, 501 n. 10 (1982). By focusing on the non-resident defendant's contacts with the forum, the minimum-contacts test protects that interest.

■ Over the years, the Court has pronounced certain principles to guide the determination whether it is fair to subject the defendant to suit in the forum. The defendant's contacts with the forum state must be such that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 *U.S.* 286, 297, 100 *S.Ct.* 559, 567, 62 *L.Ed.*2d 490, 501 (1980). As a result, the minimum-contacts test "gives a degree of predictability to the legal system that

allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* A defendant is on notice that it is subject to suit when it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 *U.S.* 235, 253, 78 *S.Ct.* 1228, 1240, 2 *L.Ed.*2d 1283, 1298 (1958); *see, e.g., Burger King Corp. v. Rudzewicz, supra,* —— *U.S.* at ——, 105 *S.Ct.* at 2182, 85 *L.Ed.*2d at 540–41; *World-Wide Volkswagen Corp. v. Woodson, supra,* 444 *U.S.* at 297, 100 *S.Ct.* at 567, 62 *L.Ed.*2d at 501. It is the purposeful act of the defendant, not the unilateral activity of another who merely claims a relationship to the defendant, that connects the defendant to the forum. *Hanson v. Denckla, supra,* 357 *U.S.* at 253, 78 *S.Ct.* at 1239–40, 2 *L.Ed.*2d at 1298.

 Although the minimum-contacts test centers on the defendant's relationship with the forum state, the sufficiency of the contacts for jurisdictional purposes depends on "the relationship among the defendant, the forum, and the litigation * * *." *Shaffer v. Heitner,* 433 *U.S.* 186, 204, 97 *S.Ct.* 2569, 2580, 53 *L.Ed.*2d 683, 698 (1977). When the cause of action arises out of the defendant's contacts with the forum state, it is more likely that the contacts will subject the defendant to the jurisdiction of the forum than if the cause arises from unrelated contacts. If the cause is related to the defendant's contacts with the forum state, an isolated act may be sufficient to subject the defendant to the jurisdiction of the forum. For example, the delivery of a life insurance policy to California, together with the payment of premiums from that state and the insured's residence there at the time of his death, was sufficient to exercise jurisdiction over a Texas life insurance company. *McGee v. International Life Ins. Co.,* 355 *U.S.* 220, 223, 78 *S.Ct.* 199, 201, 2 *L.Ed.*2d 223, 226 (1957). If, however, the cause is unrelated to the defendant's contacts with the forum, a single act will less readily support the exercise of jurisdiction *Co. v. Washington, supra,* 326 *U.S.* at 317–18, 66 *S.Ct.* at 159,

90 *L.Ed.* at 102–03. When the cause is unrelated, the defendant's contacts with the forum must be so continuous and substantial as to jusitfy subjecting the defendant to jurisdiction. *E.g., Keeton v. Hustler Magazine, Inc.,* 465 *U.S.* 770, 779 and n. 11, 104 *S.Ct.* 1473, 1481 and n. 11, 79 *L.Ed.*2d 790, 800–01 and n. 11 (1984); *International Shoe Co. v. Washington, supra,* 326 *U.S.* at 318, 66 *S.Ct.* at 159, 90 *L.Ed.* at 103; *Perkins v. Benguet Consol. Mining Co.,* 342 *U.S.* 437, 446–47, 72 *S.Ct.* 413, 418–19, 96 *L.Ed.* 485, 493 (1952).

The first step in a minimum-contacts analysis, therefore, is to determine whether the defendant has sufficient contacts with the forum state. The second step is to evaluate those contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz, supra,* —— *U.S.* at ——, 105 *S.Ct.* at 2184, 85 *L.Ed.*2d at 543 (quoting *International Shoe Co. v. Washington, supra,* 326 *U.S.* at 320, 66 *S.Ct.* at 160, 90 *L.Ed.* at 104). Thus, the decision whether it is fair and reasonable to compel the non-resident to defend a suit may depend upon a balancing of various factors in addition to the defendant's contacts with the forum. See 2 Moore's Federal Practice ¶ 4.41–1[3], at 4–450 (2d ed. 1985).

The primary concern in making that decision is the burden on the non-resident of defending the suit, a concern to
be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's power to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.

[*World-Wide Volkswagen Corp. v. Woodson, supra,* 444 *U.S.* at 292, 100 *S.Ct.* at 564–65, 62 *L.Ed.*2d at 498 (citations omitted).]

Other considerations can affect the balance, such as the extent to which the defendant has purposely availed itself of the privilege of conducting business in the forum state. *Insur-*

*ance Co. of N. Am. v. Marina Salina Cruz,* 649 *F.*2d 1266, 1270 (9th Cir.1981). The greater the benefits derived from the defendant's contacts with the forum state, the more reasonable it is to require the defendant to be subject to the jurisdiction of the forum. Another consideration is the plaintiff's contacts with the forum. Although the lack of such contacts cannot defeat jurisdiction over the defendant, their existence may be so manifold as to tip the balance in favor of the exercise of jurisdiction over the defendant when that exercise otherwise would have been improper. *Calder v. Jones,* 465 *U.S.* 783, 788, 104 *S.Ct.* 1482, 1486, 79 *L.Ed.*2d 804, 811 (1984); *cf. Keeton v. Hustler Magazine, Inc., supra,* 465 *U.S.* at 780, 104 *S.Ct.* at 1481, 79 *L.Ed.*2d at 801 ("plaintiff's residence in the forum may, because of defendant's relationship with the plaintiff, enhance defendant's contacts with the forum").

> Through the balancing process, a plaintiff may
> establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.
>
> [*Burger King Corp. v. Rudzewicz, supra,* —— *U.S.* at ——, 105 *S.Ct.* at 2184–85, 85 *L.Ed.*2d at 543–44 (citations omitted).]

In balancing these various considerations, the court ultimately must determine whether it is fair and reasonable to subject a non-resident defendant to the jurisdiction of the forum.

Throughout this century, "a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents." *McGee v. International Life Ins. Co., supra,* 355 *U.S.* at 222, 78 *S.Ct.* at 201, 2 *L.Ed.*2d at 226. As the Court stated in *McGee:*

> In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.

[*Id.* at 222–23, 78 *S.Ct.* at 201, 2 *L.Ed.*2d at 226.]

With the metamorphosis from a national to an international economy, the expansion of state jurisdiction has special relevance for foreign corporations engaged in commercial activities throughout the United States. *See Helicopteros Nacionales de Colombia v. Hall,* 466 *U.S.* 408, 421, 104 *S.Ct.* 1868, 1876, 80 *L.Ed.*2d 404, 415 (1984) (Brennan, J., dissenting); *cf. Kulko v. Superior Court of California, supra,* 436 *U.S.* at 101, 98 *S.Ct.* at 1701, 56 *L.Ed.*2d at 147 (Court noted that defendant's acts relating to the forum were not commercial acts and were not designed to obtain a benefit from the forum that would justify the forum's assertion of personal jurisdiction over the non-resident defendant). As noted by Justice Brennan, "it has become both necessary and * * * desirable to allow the States more leeway in bringing the activities of these nonresident corporations within the scope of their respective jurisdictions." *Helicopteros Nacionales de Colombia v. Hall, supra,* 466 *U.S.* at 422, 104 *S.Ct.* at 1876, 80 *L.Ed.*2d at 416 (Brennan, J., dissenting).

Five years ago, in the landmark case of *World-Wide Volkswagen Corp. v. Woodson, supra,* 444 *U.S.* at 292–93, 297–98, 100 *S.Ct.* at 565, 567, 62 *L.Ed.*2d at 498–99, 501–02, the Supreme Court extended the trend of expanding personal jurisdiction over non-resident corporations by recognizing the stream-of-commerce theory as a basis for establishing personal jurisdiction over a foreign manufacturer or distributor. Under this theory, a forum state may exercise jurisdiction over a non-resident corporation "that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 298, 100 *S.Ct.* at 567, 62 *L.Ed.*2d at 502.

Plaintiffs in *World-Wide Volkswagen* were New York residents who were injured in an automobile accident while driving through Oklahoma on the way to their new home in Arizona in a car they had purchased in New York. Alleging that their injuries resulted from the defective design and installation of

the car's gas tank and fuel system, they joined as defendants the manufacturer, importer, regional distributor, and retail dealer of the car. Although the manufacturer and importer did not challenge Oklahoma's jurisdiction over them, the regional distributor and retail dealer moved to dismiss the complaint for lack of personal jurisdiction.

The Court held that the distributor and retailer were not subject to suit in Oklahoma because they conducted no activities in that state. *Id.* at 295, 100 *S.Ct.* at 566, 62 *L.Ed.*2d at 500. Their only connection with the forum was that the car they had sold in New York happened to injure the owners while they were driving the car through Oklahoma. The owners argued that it was foreseeable that a car purchased in New York might be driven in another state such as Oklahoma, but the Court rejected foreseeability of the use of a product in the forum state as sufficient by itself to subject a defendant-distributor or retailer to personal jurisdiction in that state. Nonetheless, the Court continued by stating that

> [t]his is not to say, of course, that foreseeability is wholly irrelevant. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.
>
> [*Id.* at 297, 100 *S.Ct.* at 567, 62 *L.Ed.*2d at 501.]

Focusing on the foreseeability of being haled into court, the Court ruled that the stream-of-commerce theory could subject a manufacturer or national distributor of products to personal jurisdiction in the states in which their products are sold. As noted by the court,

> if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. *Cf. Gray v.*

*American Radiator & Standard Sanitary Corp.*, 22 *Ill.*2d 432, 176 *N.E.*2d 761 (1961).

[*Id.* at 297–98, 100 *S.Ct.* at 567, 62 *L.Ed.*2d at 501–02.]

In *World-Wide Volkswagen,* the retail dealer's sales were made only in New York, and the regional distributor's market was limited to dealers in New York, New Jersey, and Connecticut. Because Oklahoma was not part of their market, the stream-of-commerce theory could not subject the retailer and distributor to personal jurisdiction in Oklahoma. Thus, the Court concluded that the stream-of-commerce theory was not available to support Oklahoma's jurisdiction over the defendants.

 Just last term, the Court affirmed its commitment to the stream-of-commerce theory as an independent basis to satisfy the minimum-contacts standard. *Burger King Corp. v. Rudzewicz, supra,* ——— *U.S.* at ———, 105 *S.Ct.* at 2182, 85 *L.Ed.* 2d at 541. The Court observed that a foreign corporation that delivers its products into the stream of commerce has fair warning that it will be subject to suits in those states where consumers purchase its products. *Id.* The Court concluded that because such corporations

'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed.

[*Id.* at ———, 105 *S.Ct.* at 2183, 85 *L.Ed.*2d at 541 (citations omitted).]

Although we have not previously considered adoption of the stream-of-commerce theory, the Appellate Division has employed it to subject a foreign manufacturer to the jurisdiction of the New Jersey courts in a case where the manufacturer distributed its product through a wholly-owned subsidiary. *Coons v. Honda Motor Co., Ltd. of Japan,* 176 *N.J.Super.* 575 (1980), *vacated and remanded,* 455 *U.S.* 996, 102 *S.Ct.* 1625, 71 *L.Ed.*2d 857 (1982), *rev'd on other grounds,* 94 *N.J.* 307 (1983), *reh'g granted,* 95 *N.J.* 234, *modified,* 96 *N.J.* 419 (1984), *cert. denied,* ——— *U.S.* ———, 105 *S.Ct.* 808, 83 *L.Ed.*2d 800 (1985).

Even before the United States Supreme Court endorsed the stream-of-commerce theory in *World-Wide Volkswagen,* the Law Division adopted the theory to assert jurisdiction over the German manufacturer of a printing press that sold the press to a German distributor for resale in the United States. *Certisimo v. Heidelberg Co.,* 122 *N.J.Super.* 1 (1972), *aff'd sub nom. Van Eeuwen v. Heidelberg Eastern, Inc.,* 124 *N.J.Super.* 251 (App.Div.1973). In other states, legislatures have enacted statutes that incorporate the stream-of-commerce theory as a ground through which their courts can assert jurisdiction over non-resident defendants. *See Conn.Gen.Stat.Ann.* § 33–411(c)(3) (West 1960 & Supp.1986); *Nev.Rev.Stat.* § 14.080(1) (1986); *N.C.Gen.Stat.* § 55–145(a)(3) (1982); 42 *Pa.Cons.Stat. Ann.* § 5322(a)(1)(iii) (Purdon 1981); *S.C.Code Ann.* § 36–2–803(1)(h) (Law. Co-op.1976). We now adopt the stream-of-commerce theory as a basis for asserting personal jurisdiction over a non-resident defendant.

In *World-Wide Volkswagen, supra,* 444 *U.S.* at 297–98, 100 *S.Ct.* at 567, 62 *L.Ed.*2d at 501–02, the Supreme Court noted that the stream-of-commerce theory would apply to subject foreign manufacturers and major distributors, but not local retailers or distributors, to jurisdiction in the states where their products were eventually shipped and sold. The foreseeable market served by local retailers and distributors, which are at the end of the distribution chain, is constrained. *E.g., Nelson by Carson v. Park Indus., Inc.,* 717 *F.*2d 1120, 1125 (7th Cir.1983), *cert. denied sub nom. Bunnan Tong & Co., Ltd. v. F.W. Woolworth Co.,* 465 *U.S.* 1024, 104 *S.Ct.* 1277, 79 *L.Ed.*2d 682 (1984); *Rockwell Int'l Corp. v. Costruzioni Aeronautiche Giovanni Agusta,* 553 *F.Supp.* 328, 332 (E.D.Pa.1982). In contrast, manufacturers and distributors, which are at the start of a distribution chain, serve a larger market and "purposely conduct their activities to make their product available for purchase in as many forums as possible." *Nelson by Carson v. Park Indus., Inc., supra,* 717 *F.*2d at 1125. For such a manufacturer, the sale of its product in a distant state is not

simply an isolated event, but the result of the corporation's efforts to cultivate the largest possible market for its product. *Rockwell Int'l Corp. v. Costruzioni Aeronautiche Giovanni Agusta, supra,* 553 *F.Supp.* at 332; *see Certisimo v. Heidelberg Co., supra,* 122 *N.J.Super.* at 10. Because the manufacturer and primary distributor intend to serve and derive benefits from a larger market, it is fair to subject them to jurisdiction, while excusing a secondary distributor or retailer. *Nelson by Carson v. Park Indus., Inc., supra,* 717 *F.*2d at 1125–26.

■ As observed in several cases, foreign manufacturers derive benefits from the indirect sale of their products throughout the United States. *See, e.g., id.* at 1126; *DeJames v. Magnificence Carriers, Inc.,* 654 *F.*2d 280, 285 (3rd Cir.), *cert. denied,* 454 *U.S.* 1085, 102 *S.Ct.* 642, 70 *L.Ed.*2d 620 (1981); *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty, Ltd.,* 647 *F.*2d 200, 205 (D.D.C.1981); *Asahi Metal Indus. Co. v. Superior Court,* 39 *Cal.*3d 35, 45, 216 *Cal.Rptr.* 385, 390, 702 *P.*2d 543, 547 (1985), *cert. granted,* — *U.S.* —, 106 *S.Ct.* 1258, 89 *L.Ed.*2d 569 (1986); *Gray v. American Radiator & Standard Sanitary Corp., supra,* 22 *Ill.*2d at 438, 176 *N.E.*2d at 766; *Certisimo v. Heidelberg Co., supra,* 122 *N.J.Super.* at 12; *State ex rel. Hydraulic Servocontrols Corp. v. Dale,* 294 *Or.* 381, 387, 657 *P.*2d 211, 215 (1982). By increasing the distribution of its products, the manufacturer not only benefits economically from indirect sales to forum residents, but also benefits from the protection provided by the laws of the forum state. Thus, a manufacturer that distributes its products into the stream of commerce for widespread distribution derives both legal and economic benefits from the states in which its products are sold. In sum, the system through which the manufacturer distributes its products evidences the manufacturer's purposeful penetration of the market.

■ A foreign manufacturer that purposefully avails itself of those benefits should be subject to personal jurisdiction, even though its products are distributed by independent companies

or by an independent, but wholly-owned, subsidiary. *See, e.g.,*
*DeJames v. Magnificence Carriers, Inc., supra,* 654 *F.*2d at
285; *Oswalt v. Scripto, Inc.,* 616 *F.*2d 191, 197 n. 8 (5th
Cir.1980); *Gelineau v. New York Univ. Hosp.,* 375 *F.Supp.*
661, 667 (D.N.J.1974); *Buckeye Boiler Co. v. Superior Court,*
71 *Cal.*2d 893, 901, 80 *Cal.Rptr.* 113, 120, 458 *P.*2d 57, 64
(1969); *Le Manufacture Francaise des Pneumatiques Miche-*
*lin v. District Court,* 620 *P.*2d 1040, 1045 (Colo.1980); *Gray v.*
*American Radiator & Standard Sanitary Corp., supra,* 22
*Ill.*2d at 438, 176 *N.E.*2d at 766; *Coons v. Honda Motor Co.,*
*Ltd. of Japan, supra,* 176 *N.J.Super.* at 580–81; *Bush v. BASF*
*Wyandotte Corp.,* 64 *N.C.App.* 41, 49, 306 *S.E.*2d 562, 568
(1983). *Contra Samuels v. BMW of N. Am., Inc.,* 554 *F.Supp.*
1191 (E.D.Tex.1983). In today's complex business world, for-
eign manufacturers rarely deliver products directly to consum-
ers in the United States. *Gray v. American Radiator &*
*Standard Sanitary Corp., supra,* 22 *Ill.*2d at 438, 176 *N.E.*2d
at 766. Instead, these manufacturers employ middlemen, many
of whom are often independent, to act as their distribution
arms. To allow a foreign manufacturer to shield itself from
liability for damages caused by its products distributed by
those middlemen would be to permit "a legal technicality to
subvert justice and economic reality in the worst sense." *Cer-*
*tisimo v. Heidelberg Co., supra,* 122 *N.J.Super.* at 12. Foreign
manufacturers should not be allowed to insulate themselves by
using intermediaries in a chain of distribution or by professing
ignorance of the ultimate destination of their products. *See,*
*e.g., DeJames v. Magnificence Carriers, Inc., supra,* 654 *F.*2d
at 285; *Honeywell, Inc. v. Metz Apparatewerke,* 509 *F.*2d 1137,
1144 (7th Cir.1975); *Rockwell Int'l Corp. v. Costruzioni Aero-*
*nautiche Giovanni Agusta, supra,* 553 *F.Supp.* at 334; *He-*
*trick v. American Honda Motor Co., Inc.,* 429 *F.Supp.* 116,
118–19 (D.Neb.1976); *Coons v. Honda Motor Co., Ltd. of*
*Japan, supra,* 176 *N.J.Super.* at 580–81. Thus, the stream-of-
commerce theory supports personal jurisdiction over foreign

manufacturers that derive benefits from the distribution and sale of their products in the United States.

■ As applied to a manufacturer, the stream-of-commerce theory supports the exercise of jurisdiction if the manufacturer knew or reasonably should have known of the distribution system through which its products were being sold in the forum state. *See, e.g., Nelson by Carson v. Park Indus., Inc., supra,* 717 *F.*2d at 1126; *Noel v. S.S. Kresge Co.,* 669 *F.*2d 1150, 1155 (6th Cir.1982); *Oswalt v. Scripto, Inc., supra,* 616 *F.*2d at 200–01; *Hetrick v. American Honda Motor Co., supra,* 429 *F.Supp.* at 118; *Asahi Metal Indus. Co. v. Superior Court, supra,* 39 *Cal.*3d at 49–51, 216 *Cal.Rptr.* at 392–94, 702 *P.*2d at 550–51; *Martinez v. American Standard,* 91 *A.D.*2d 652, 653, 457 *N.Y.S.*2d 97, 99 (1982), *aff'd,* 60 *N.Y.*2d 873, 470 *N.Y.S.*2d 367, 458 *N.E.*2d 826 (1983). The manufacturer's awareness of the distribution system satisfies the requirement that the manufacturer have a reasonable expectation that its products will be purchased in the forum state. It makes no difference whether the manufacturer had actual or constructive knowledge of the distribution system. *Oswalt v. Scripto, Inc., supra,* 616 *F.*2d at 200. A manufacturer that should have known, like one that actually knows, that its products will be sold in the forum state purposefully avails itself of the benefits of the forum's laws. *Id.* at 200–01.

By definition, a stream-of-commerce case involves a sale not by the manufacturer, but by another entity in the chain of distribution. *Asahi Metal Indus. Co. v. Superior Court, supra,* 39 *Cal.*3d at 49 n. 7, 216 *Cal.Rptr.* at 393 n. 7, 702 *P.*2d at 550 n. 7. To be subject to the stream-of-commerce theory in some jurisdictions, the manufacturer must purposefully participate in or control the distribution of its products. *See Honeywell, Inc. v. Metz Apparatewerke, supra,* 509 *F.*2d at 1144; *Cascade Steel Rolling Mills, Inc. v. C. Itoh & Co. (America) Inc.,* 499 *F.Supp.* 829, 842–43 (D.Or.1980); *Kenny v. Alexson Equip. Co.,* 495 *Pa.* 107, 125, 432 *A.*2d 974, 984 (1981). We

believe, however, that a manufacturer need not so control the distribution system to place its products into the stream of commerce and, therefore, control of that system is not necessary to subject the manufacturer to the jurisdiction of the forum state. *See Nelson by Carson v. Park Indus., Inc., supra,* 717 *F.*2d at 1126 n. 7. The focus is on the manufacturer's actual or constructive awareness of the system, not on control of the distribution of its products. A manufacturer's establishment or control of a distribution system, of course, satisfies the requirement that the manufacturer was aware of that distribution system.

A manufacturer's awareness of the distribution system, through which it receives economic and legal benefits, justifies subjecting the manufacturer to the jurisdiction of every forum within its distributors' market area. *Nelson by Carson v. Park Indus., Inc., supra,* 717 *F.*2d at 1126; *cf. World-Wide Volkswagen Corp. v. Woodson, supra,* 444 *U.S.* at 297, 100 *S.Ct.* at 567, 62 *L.Ed.*2d at 501 (manufacturers should be subject to suit when they indirectly serve the market for their products). Accordingly, a manufacturer that knows its products are distributed through a nationwide distribution system should reasonably expect that those products would be sold throughout the fifty states and that it will be subject to the jurisdiction of every state. By attempting to preclude the distribution and sale of its products in the forum state, however, a manufacturer can avoid the jurisdiction of the courts of that state. *See Bean Dredging Corp. v. Dredge Technology Corp.,* 744 *F.*2d 1081, 1085 (5th Cir.1984); *Plant Food Co-op v. Wolfkill Feed & Fertilizer Corp.,* 633 *F.*2d 155, 159 (9th Cir.1980); *Oswalt v. Scripto, Inc., supra,* 616 *F.*2d at 199–200; *Rockwell Int'l Corp. v. Costruzioni Aeronautiche Giovanni Agusta, supra,* 553 *F.Supp.* at 333. A manufacturer that prohibits the distribution of its products in a particular state would not reasonably expect its products to be sold in that state. Thus, the stream-of-commerce theory should not subject such a manufacturer to the forum state's jurisdiction.

–III–

■ In this case, Nippon manufactures telephone systems, which are sold throughout the world, including the United States. Gendler purchased one of Nippon's telephone systems, and Telecom installed it in Gendler's place of business in New Jersey. Thereafter, upon discovering that the system was defective, Gendler sued Nippon in New Jersey essentially for breach of contract and breach of warranty. Gendler's cause of action, which results from the purchase in New Jersey of the Nippon telephone system, relates to Nippon's contacts with this state, and, therefore, involves an exercise by the New Jersey courts of "specific jurisdiction." By comparison, "general jurisdiction" pertains to a state's exercise of " 'personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum.' " *Burger King Corp. v. Rudzewicz, supra,* —— *U.S.* at ——, 105 *S.Ct.* at 2182 n. 15, 85 *L.Ed.*2d at 541 n. 15 (quoting *Helicopteros Nacionales de Colombia v. Hall, supra,* 466 *U.S.* at 414 n. 9, 104 *S.Ct.* at 1872 n. 9, 80 *L.Ed.*2d at 411 n. 9). Because this case arises out of the sale in New Jersey of a Nippon telephone, we need not decide what minimum contacts would be required to satisfy the stream-of-commerce theory if plaintiff's cause of action were unrelated to defendant's contacts with the forum.

■ Nippon argues that the stream-of-commerce theory should not apply because Gendler's claim is for property damage and economic loss, not personal injuries. Other courts, however, have applied the stream-of-commerce theory in property damage and economic injury cases. *See, e.g., Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty, Ltd., supra,* 647 *F.*2d 200; *Plant Food Co-op v. Wolfkill Feed & Fertilizer Corp., supra,* 633 *F.*2d 155; *Copiers Typewriters Calculators, Inc. v. Toshiba Corp.,* 576 *F.Supp.* 312 (D.Md. 1983); *Cascade Steel Rolling Mills, Inc. v. C. Itoh & Co. (America) Inc., supra,* 499 *F.Supp.* 829. We recognize that the nature of the injury is relevant to the jurisdictional inquiry.

A state's interest in providing a forum for its residents is more compelling in a personal injury action than in commercial litigation. *Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, *supra*, 576 *F.Supp.* at 321; *J.W. Sparks & Co. v. Gallos*, 47 *N.J.* 295, 302 (1966). Nonetheless, we perceive no basis for allowing the nature of the injury to preclude the application of the stream-of-commerce theory. Accordingly, we hold that the stream-of-commerce theory can subject to the jurisdiction of the courts of this state a foreign manufacturer that has caused property damage or economic loss.

 The only evidence in the record relating to this theory is Nippon's certification that it manufactures "telephone equipment for sale to companies throughout the world." Confronted with that paucity of facts, the Law Division found no evidence that Nippon was even aware of the system for distributing its telephone equipment, but the Appellate Division ruled that the certification was sufficient to sustain jurisdiction. On the record before us, we are reluctant to conclude that Nippon is subject to the personal jurisdiction of the New Jersey courts under the stream-of-commerce theory.

At oral argument, plaintiff's counsel informed us that response to his Notice to Produce will establish Nippon's amenability to suit in New Jersey. We believe he should have the opportunity to supplement the record with these answers. In light of our adoption of the stream-of-commerce approach in this decision, both parties may require additional discovery on the jurisdictional question. If so, that discovery should proceed expeditiously and be subject to such restrictions as the Law Division may impose.

 The relevant facts to be developed on remand include those relating to the issue whether Nippon was aware or should have been aware of a system for distributing its telephones throughout the United States. Although the sale of a Nippon telephone to Gendler in New Jersey probably was not an isolated transaction, the better practice is for plaintiff to

submit proof that its purchase of the Nippon telephones was not a fortuitous event, but the result of an established distribution system for Nippon's telephone systems. It is not necessary that a manufacturing corporation wholly own the distributing subsidiaries, but the fact that Nippon so owns NEC America and NEC Telephones tends to support the exercise of jurisdiction over Nippon under the stream-of-commerce theory. Similarly, it is unnecessary that Nippon control the subsidiaries although any such control would also support the exercise of jurisdiction over Nippon. The crucial question is whether Nippon was aware or should have been aware of a system of distribution that is purposefully directed at New Jersey residents. Although the burden on Nippon of defending this action is of primary concern, even on the limited record before us, we perceive that defendants' burden is so far outweighed by the burden on plaintiff of litigating in Japan that the balance tips in favor of preserving the New Jersey action. *See Omstead v. Brader Heaters, Inc.,* 5 *Wash.App.* 258, 272, 487 *P.*2d 234, 243 (1971). The interest of New Jersey in products sent here by non-resident manufacturers also supports the exercise of jurisdiction by the courts of this state. As the state where Gendler maintains its principal office, where the telephones were installed, and where Telecom—formerly a party, and now a potential witness—is located, New Jersey presents an efficient forum for the resolution of the controversy. New York, which Nippon proffers as an alternative forum, is no more convenient for Nippon, which is located in Tokyo, but is less convenient for Gendler. About the only advantage that New York offers to Nippon is that the present action is not pending in that state.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division.

WILENTZ, C.J., and CLIFFORD, HANDLER, O'HERN, GARIBALDI and STEIN, JJ., join in this opinion.