221 N.J. Super. 432 (1987)
534 A.2d 1032
JEANNETTE BOVINO, PLAINTIFF-RESPONDENT,
v.
DR. BRUMBAUGH; SANAN ATAMIAN, M.D., JOEL PORTER, M.D.; POLINA KARMAZIN, M.D.; VESNA MIHAILOVIC, M.D.; DR. STEIN; AND JOHN DOE PHYSICIANS, DEFENDANTS, AND ROBERT C. SERGOTT, M.D., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 4, 1987.
Decided December 7, 1987.
*433 Before Judges MICHELS, GAYNOR and A.M. STEIN.
Dominic A. DeLaurentis, Jr. argued the cause for appellant (Griffith, Burr, Angelini & Viniar, attorneys; Dominic A. DeLaurentis, Jr., on the brief).
Antonina Coffey argued the cause for respondent (Friedman, Bafundo, Ginsberg & Porter, attorneys; Gary D. Ginsberg, on the brief).
The opinion of the court was delivered by GAYNOR, J.A.D.
In this medical malpractice case, defendant Robert C. Sergott, M.D., a licensed physician of the Commonwealth of Pennsylvania, who resides and practices in that State, by leave *434 granted appeals from the denial of his motion for the dismissal of the complaint for lack of in personam jurisdiction. It is contended that the motion judge erred in failing to apply the proper test in determining this jurisdictional issue.[1] We agree that the motion was erroneously denied and reverse.
Plaintiff, a subscriber to the Health Care Plan of New Jersey, came under the care of the plan and several affiliated physicians for treatment of a condition in her left eye. During the course of the treatment, plaintiff was referred by one of the doctors to Dr. Sergott for a neuro-opthalmic evaluation. Dr. Sergott's examination of plaintiff was conducted on two dates in his office in Philadelphia. A written report containing his evaluation of plaintiff's condition and suggesting a course of treatment was thereafter forwarded by Dr. Sergott to the referring physician. Subsequently, Dr. Sergott communicated by telephone with the plan physicians on several occasions concerning the treatment being rendered to plaintiff.[2] Contending that she had suffered serious injury to her eye because of improper treatment, plaintiff seeks recovery in this action against the plan physicians and Dr. Sergott.
In support of his motion for dismissal on jurisdictional grounds, Dr. Sergott certified that he is a resident of the Commonwealth of Pennsylvania and a duly licensed physician of that State; that he does not, nor did he ever, practice medicine in New Jersey; that he is not professionally affiliated with any hospital, health care institution, or physician in New Jersey and he conducts no business in New Jersey, either individually or through any agents, servants, workmen or employees; that he does not, nor did he ever, solicit, consult or treat patients in New Jersey or maintain any offices in New *435 Jersey for the solicitation, consultation or treatment of patients; that he does not, nor did he ever, advertise in New Jersey; that he never examined, treated or saw plaintiff within New Jersey, nor did he have any connection whatsoever with the plaintiff in this State; and that any professional contact he had with plaintiff occurred solely within the Commonwealth of Pennsylvania.
On this appeal, Dr. Sergott contends the motion judge erred in denying his motion as the facts disclosed there was no transactional basis for the exercise of jurisdiction nor did his conduct involve sufficient contact with New Jersey to warrant subjecting him to this State's in personam jurisdiction. It is plaintiff's position that the extent and nature of the effects caused in this State by Dr. Sergott's participation with the plan's physicians in the evaluation and treatment of her condition were sufficient to meet the "minimum contacts" test for jurisdictional purposes. Further, to require Dr. Sergott to answer in New Jersey for the results of his conduct pertaining to the treatment of plaintiff assertedly would not offend traditional notions of fair play and substantial justice.
It is well established that New Jersey permits long-arm jurisdiction over nonresidents to the utmost limits allowed by the due process clause of the United States Constitution. R. 4:4-4(c); Charles Gendler & Co. v. Telecom Equipment Corp., 102 N.J. 460, 469 (1986); Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971). Due process requires only that in order to subject a foreign defendant to a judgment in personam there must be certain minimum contacts with the forum so that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). As explained in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) this requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. at 253, 78 S.Ct. at 1240. If *436 the suit arises out of a single act or transaction having a substantial connection with the forum, jurisdiction may be founded upon this transactional contact. Charles Gendler 102 N.J. at 471. As stated in Avdel, 58 N.J. 264, "a non-resident defendant who is not doing business in a state in the traditional sense may nonetheless be amenable to suit in that state where he enters into a contract which will have significant effects in that state." 58 N.J. at 272. However, the mere foreseeability that the conduct of a defendant would have some effects in the forum state is not sufficient to support jurisdiction. Rather, the connection with that state must be such that the defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).
Thus, the first step in such a jurisdictional inquiry is to determine whether the defendant has sufficient contacts with the forum state. If so, it is then necessary to evaluate those contacts in light of other factors to ascertain whether it would be fair and reasonable to assert personal jurisdiction over the nonresident defendant. Charles Gendler, 102 N.J. at 472; Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985).
Applying these rules to the instant case, we perceive no act of Dr. Sergott, in his professional relationship with plaintiff, by which he purposefully availed himself of the privilege of practicing medicine in New Jersey which would satisfy the test of a transactional contact for jurisdictional purposes. He neither initiated nor sought the consultation pertaining to plaintiff's optical problem. Rather, the evaluation was requested by one of plaintiff's treating physicians. Moreover, all of the doctor's contact with plaintiff took place at his office in Philadelphia. The subsequent telephone communications between Dr. Sergott and the plan physicians were nothing more than follow-ups to his consult evaluation and did not constitute such contacts with New Jersey as would cause him to reasonably anticipate being haled into court here to answer claims of *437 malpractice asserted by plaintiff. The minimum contacts test thus has not been met.
While satisfied that the application of the traditional standards pertaining to the exercise of long-arm jurisdiction mandate the dismissal of the complaint as to Dr. Sergott, we are also convinced that additional considerations preclude the assertion of in personam jurisdiction over a nonresident physician who renders medical services at his location to a patient voluntarily traveling from the forum state in order to obtain the benefit of the physician's services. The validity of such considerations was recognized in Gelineau v. New York University Hospital, 375 F. Supp. 661 (D.N.J. 1974). There, plaintiff, a New Jersey resident, sought to effect "long-arm" jurisdiction upon the defendant hospital, a New York corporation, in his action for damages sustained as a result of the contraction of infectious hepatitis allegedly due to blood transfusions received during the course of surgical treatment at the hospital. In dismissing the complaint for lack of jurisdiction, the court observed:
The case at bar does not involve a product which was deliberately or foreseeably shipped into the forum state's markets. It focuses on a service, not performed in the forum state but in a foreign state, rendered after the plaintiff voluntarily traveled to the foreign state so that he could benefit from that service which was available there only.
When one seeks out services which are personal in nature, such as those rendered by attorneys, physicians, dentists, hospitals or accountants, and travels to the locality where he knows the services will actually be rendered, he must realize that the services are not directed to impact on any particular place, but are directed to the needy person himself. While it is true that the nature of such services is that if they are negligently done, their consequences will thereafter be felt wherever the client or patient may go, it would be fundamentally unfair to permit a suit in whatever distant jurisdiction the patient may carry the consequences of his treatment, or the client the consequences of the advice received.
* * * * * * * *
It is clear that when a client or a patient travels to receive professional services without having been solicited (which is prohibited by most professional codes of ethics), then the client, who originally traveled to seek services apparently not available at home, ought to expect that he will have to travel again if he thereafter complains that the services sought by him in the foreign jurisdiction were therein rendered improperly.

*438 Any other rule would seem to be not only fundamentally unfair, but would inflict upon the professions the obligation of traveling to defend suits brought in foreign jurisdictions, sometimes very distant jurisdictions, there brought solely because the patient or client upon his return to his own home decided to sue at home for services sought by himself abroad.
Such rule would have a chilling effect on the availability of professional services to non-residents. Professionals in the medical field, for example, concerned with one of the most rapidly advancing sciences of modern times, would be hesitant to treat a non-resident if they knew that thereafter, upon the receipt of a registered letter, they could be compelled to travel to a foreign state, and there to account, under the laws of that state, for the services which were sought from them and rendered by them at home.
These observations are particularly applicable to the present case and in our view provide sound reasons for not requiring Dr. Sergott to defend this malpractice action in a forum foreign to him.
We therefore reverse the order dated February 27, 1987 denying defendant's motion for dismissal of the complaint for lack of in personam jurisdiction.
Reversed.
NOTES
[1] The record before us does not contain the motion judge's reasoning for denying defendant's application.
[2] This information was offered by plaintiff's counsel at oral argument. The record does not contain any factual data as to this defendant's contact with the plan's physicians other than the report of his examination.