689 A.2d 148

INTERLOTTO, INC., PLAINTIFF–RESPONDENT, AND INVESTCO, LTD., PLAINTIFF/INTERVENOR–RESPONDENT, v. THE NATIONAL LOTTERY ADMINISTRATION, A BODY POLITIC OF THE DOMINICAN REPUBLIC AND THE GOVERNMENT OF THE DOMINICAN REPUBLIC, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued December 18, 1996—Decided February 20, 1997.

Before Judges KING, KEEFE and LOFTUS.

*Michael A. Lampert* Esq., *McManimon & Scotland*, argued on behalf of appellant The National Lottery Administration (*Michael A. Lampert* and *Michael R. Chayet*, on the briefs filed on behalf of both appellants).[1]

*George Weisz*, a member of the New York Bar admitted Pro Hac Vice, *Cleary, Gottlieb, Steen & Hamilton*, argued on behalf of appellant The Government of the Dominican Republic. (*Michael A. Lampert* and *Michael R. Chayet*, on the briefs filed on behalf of both appellants).

---

[1] A substitution of attorney was filed identifying Saul, Ewing, Remick & Saul as superseding attorneys for The National Lottery Administration and The Government of the Dominican Republic.

*Gary S. Redish* Esq., *Winne, Banta, Rizzi, Hetherington & Basralian, P.C.,* argued on behalf of respondent Interlotto, Inc. (*Gary S. Redish,* on the brief).

*Davis S. Abramson,* attorney for respondent Investco, Ltd. (*Laurence D. Pittinsky*), joins in the brief of Interlotto, Inc.[2]

The opinion of the court was delivered by

KEEFE, J.A.D.

In these two appeals that have been consolidated for the purpose of this opinion, defendants The Dominican Republic and its national lottery administration, Loteria National (Loteria), improperly impleaded as The National Lottery Administration, appeal from a default judgment in excess of six million dollars entered on a breach of contract suit brought by plaintiff, Interlotto, Inc. (Interlotto), an American corporation that set up an instant lottery for them.

The issues presented on appeal are:

I. DOES THE COURT LACK PERSONAL JURISDICTION?

II. DOES THE COURT LACK SUBJECT MATTER JURISDICTION OR DOES INTERLOTTO LACK STANDING TO SUE?

III. SHOULD THE DEFAULT JUDGMENT BE VACATED PURSUANT TO *R.* 4:50–1?

We conclude for the reasons expressed that the Law Division lacked personal jurisdiction over both defendants, and vacate the judgment entered against them. We need not address the other issues presented.

The contract, written and executed in the Dominican Republic, is between the Loteria and Interlotto and calls for the latter to assist in the design of an instant lottery; secure the services of a printer of "international reputation" to print the tickets and, once

---

[2] We were advised at oral argument that plaintiff Interlotto, Inc. successfully sued intervenor Investco, Ltd. in separate litigation to obtain a re-assignment of the default judgment at issue in this appeal, and that intervenor's appeal from that judgment has been dismissed.

printed, to ship them to the Dominican Republic; to supply the technology necessary to implement the lottery and to contract with and manage all personnel necessary to implement it. Interlotto was to develop a network of vendors for ticket sales, handle advertising, and obtain insurance against errors in printing.

In return for these services, Interlotto was to receive fifteen percent of the face value of each ticket. The contract called for the parties to be bound by procedures established by an internationally renowned accounting firm. It also outlined a yearly audit of Interlotto's books by the government to determine the actual return on investment. On the basis of this accounting, the parties were to "determine the reduction in the percentage on the face value of the ticket which is paid to Interlotto, to transfer it to the percentage destined to be returned to the public in prizes."

The contract, governed by Dominican Republic law, provides for termination if the Loteria contracted with another company for a similar game; if the tax situation changed; or if Interlotto failed to comply with its obligations.

Interlotto contended that the Loteria breached the contract in various respects. On March 30, 1992, Interlotto, a New York-based company incorporated in Delaware, filed a complaint against Loteria and the Dominican Republic in the Superior Court. Interlotto sought more than $600,000 for the putative breach of its contract, as well as future lost profits, punitive damages, and a full accounting of transactions to date.

Interlotto sent a summons, complaint, and notice of suit in Spanish by telecopier to Federico Antun Abud, then the director of the Loteria. That same day, it sent the documents in both English and Spanish-language versions to Antun by mail. In an affidavit signed on June 11, 1992, Antun acknowledged receipt of the summons, complaint, and notice of suit in both languages via Federal Express. According to Antun, an employee of the Loteria's legal department was also served with an English version of the complaint and a Spanish version of the summons by a Dominican marshall empowered to serve process on Dominican nationals.

The marshall also served the summons and complaint on an employee of the office of the Secretary of State of Finance for the Dominican Republic.

On May 29, 1992, a New Jersey law firm filed a notice of removal in the United States District Court for New ·Jersey on behalf of both defendants beyond the thirty days allowed for removal provided by 28 *U.S.C.A.* §§ 1441(d) and 1441(b). Judge Lechner of that court remanded the case to state court. He specifically found that Interlotto had made adequate service on defendants in that they had actual notice of the complaint for removal purposes but declined to determine if defendants had any rights under the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 *U.S.C.A.* § 1602 to § 1611.

Back in state court again, the same New Jersey law firm, by notice of motion dated August 4, 1992, moved to dismiss the complaint for lack of personal and subject matter jurisdiction and on forum non conveniens grounds. The firm then withdrew as counsel for defendants by order of March 12, 1993 without a hearing on the motion. That same order dismissed the August 4 motion without prejudice and directed defendants to answer within thirty-five days of service of the order. The order directed two methods for its service on the defendants, certified United States mail with return receipt requested, and personal service. Interlotto complied with the order.

Defendants took no further action in the case, and on June 24, 1993, a Law Division judge entered a default against both defendants. The trial court held a proof hearing on July 26, 1993, and judgment for $6,732,000, representing actual and future lost profits, was entered the same day. Defendants claim that neither was served with a copy of the default judgment pursuant to 28 *U.S.C.A.* § 1608(e).

By notice of motion dated June 23, 1994, defendants, through their new attorneys and current counsel, sought to set aside the default judgment or reduce the amount of damages. At the hearing on the motion, the trial court indicated that it felt that

defendants exhibited "a cavalier attitude" toward the action, aware of the possibility of default but taking no action until someone sought execution on the judgment. The court also considered itself bound by the law of the case, namely, Judge Lechner's ruling on adequacy of service. Indeed, the trial judge noted that even if it were not bound, it believed that sufficient activities took place within the United States and New Jersey to justify jurisdiction. He denied defendants' motion with prejudice. These appeals followed.

■ Both defendants maintain that they lack the minimum contacts requisite to a finding of personal jurisdiction. Federal law specifically gives United States District Courts personal jurisdiction over foreign states and their agencies whenever subject matter jurisdiction exists under FSIA § 1608. 28 *U.S.C.A.* § 1330(b). No such statutory delegation exists in favor of state courts, and defendants' ties to New Jersey must therefore satisfy at least the "minimum contacts test" articulated in *International Shoe Co. v. Washington*, 326 *U.S.* 310, 316, 66 *S.Ct.* 154, 158, 90 *L.Ed.* 95, 102 (1945).

Interlotto correctly states the principle that, under the FSIA, a federal court will look to the foreign entities's contacts throughout the United States and not only in the forum jurisdiction. *See Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 *F.*2d 300, 314 (2d Cir.1981), *cert. denied*, 454 *U.S.* 1148, 102 *S.Ct.* 1012, 71 *L.Ed.*2d 301 (1982). But the federal courts have been delegated personal jurisdiction over the foreign entity so long as the subject matter requisites of FSIA § 1605 are met, which are considered more stringent than those of many "long-arm" statutes. *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 *F.*2d 445, 452 (6th Cir.1988). Hence, for purposes of establishing federal jurisdiction only, minimum contacts of a foreign defendant can have occurred anywhere in the country.

■ However, because personal jurisdiction is not automatically delegated to state courts, defendants here must be subject to the jurisdictional prerequisites of New Jersey. New Jersey's long-

arm jurisdiction reaches to the "outermost limits" that are constitutionally permissible. *Lebel v. Everglades Marina, Inc.,* 115 *N.J.* 317, 329, 558 *A.*2d 1252 (1989). *See also Avdel Corp. v. Mecure,* 58 *N.J.* 264, 268, 277 *A.*2d 207 (1971).

The two contacts that the trial court specifically found between defendants and New Jersey were the printing by Webcraft of some of the lottery tickets in the state, and a visit to New Jersey by defendants' agents with respect to the printing of those tickets by Webcraft. In addition, the trial court found that contract negotiations took place in this country. Defendants raise factual questions about the alleged visit and negotiations. As a practical matter, however, such questions need not be answered.

A "case-by-case analysis of defendant's relationship with the forum state" through the application of the "minimum contacts" test ensures that the jurisdictional requirement of due process is met. *Waste Management, Inc. v. Admiral Ins. Co.,* 138 *N.J.* 106, 122, 649 *A.*2d 379 (1994) (*citing Charles Gendler & Co. v. Telecom Equip. Corp.,* 102 *N.J.* 460, 470, 508 *A.*2d 1127 (1986)). The "minimum contacts" analysis has two prongs. The first prong requires the court to "determine whether minimum contacts exist at all." *Waste Management, Inc., supra,* 138 *N.J.* at 122, 649 *A.*2d 379. Once the court determines that there are sufficient minimum contacts to exercise its jurisdiction, the second prong requires the court to determine "whether those minimum contacts establish jurisdiction consistent with considerations of fair play and substantial justice," which depends upon the "relationship among the defendant, the forum, and the litigation." *Id.* at 121–123, 649 *A.*2d 379. *See International Shoe Co. v. Washington, supra,* 326 *U.S.* at 316, 66 *S.Ct.* at 158, 90 *L.Ed.* at 102; *Shaffer v. Heitner,* 433 *U.S.* 186, 204, 97 *S.Ct.* 2569, 2580, 53 *L.Ed.*2d 683, 698 (1977). "However, a court may not weigh those other factors until it has found that the defendant has experienced sufficient minimum contacts to satisfy the threshold determination." *Waste Management, Inc., supra,* 138 *N.J.* at 121, 649 *A.*2d 379.

 Under the first prong, the court must determine whether it has "specific" or "general" jurisdiction. *Id.* at 119, 649 *A.*2d 379. In this case, the cause of action does not arise directly out defendant's two contacts with New Jersey, and therefore, the court's jurisdiction is not "specific." *Ibid. (citing Lebel, supra,* 115 *N.J.* at 322, 558 *A.*2d 1252). Therefore, in order for this court to have general jurisdiction over defendant, "the defendant's contacts must be so continuous and substantial as to justify subjecting the defendant to jurisdiction." *Waste Management, Inc., supra,* 138 *N.J.* at 123, 649 *A.*2d 379 (*quoting Charles Gendler & Co., supra,* 102 *N.J.* at 472, 508 *A.*2d 1127).

The defendant's contacts must be such that the "defendant should reasonably anticipate being haled into court" in New Jersey. *Waste Management, Inc., supra,* 138 *N.J.* at 120, 649 *A.*2d 379; *See World–Wide Volkswagen Corp. v. Woodson,* 444 *U.S.* 286, 297, 100 *S.Ct.* 559, 567, 62 *L.Ed.*2d 490, 500 (1980). "The record must demonstrate that the defendant has purposefully availed itself of the privilege of engaging in activities within the forum state, thereby gaining the benefits and protections of its laws." *Waste Management, Inc., supra,* 138 *N.J.* at 121, 649 *A.*2d 379; *See Burger King Corp. v. Rudzewicz,* 471 *U.S.* 462, 475, 105 *S.Ct.* 2174, 2183, 85 *L.Ed.*2d 528, 542 (1985). This analysis by the court of the sufficiency of defendant's contacts with the forum state protects defendants "against being haled into court in a foreign jurisdiction solely on the basis of random, fortuitous, or attenuated contacts or as a result of the unilateral activity of some other party." *Ibid.*

Although there is a dispute between the parties as to whether there were contract negotiations outside the Dominican Republic, there appears to be no factual dispute as to whether such negotiations took place in New Jersey. Plaintiff asserts that they took place in the United States but does not allege a New Jersey locale.

 The issue then narrows to a consideration of the printing of lottery tickets in New Jersey by Webcraft and a visit to the Webcraft's New Jersey plant by some representatives of defen-

dants. To the extent that a visit by defendants' representatives was to observe the printing of tickets by Webcraft, the single visit constitutes a contact with New Jersey. However, defendants could not have expected at the time the contract was signed that it was reasonably possible for them to be sued in New Jersey. While defendants might have expected to be sued in New York, where plaintiff could still bring suit, they could have little expectation of having to defend themselves in its neighbor state based solely on a visit to the site where lottery tickets were to be printed.

■ A single isolated act may be sufficient to exercise jurisdiction over a non-resident defendant if the cause of action is related to its contacts with the forum state. *Charles Gendler & Co. Inc., supra,* 102 *N.J.* at 471, 508 *A.*2d 1127. Here, however, none of the various allegations of breach asserted in the complaint relate to that contact. Assuming the visit did take place as plaintiff alleges and for the reason plaintiff alleges, at best Loteria (and the Dominican Republic as well if the two are alter-egos) played an insignificant role in plaintiff's contract with Webcraft. Indeed, plaintiff conceded at oral argument that its contract with Loteria did not require Loteria's consent with respect to Interlotto's choice of Webcraft to print the tickets. In any event, plaintiff's contract with Webcraft did not give rise to any of the asserted causes of action for breach brought by plaintiff against defendants.

Even if we were to assume that the one contact with New Jersey was related to the cause of action the test to examine the conferral of jurisdiction is two-pronged, and even conceding plaintiff's success on the first prong, it cannot meet the second. Once a court finds that a minimum contact has been established, it must decide whether the conferral of jurisdiction would "offend traditional notions of fair play and substantial justice." *Lebel, supra,* 115 *N.J.* at 327, 558 *A.*2d 1252.

■ At that juncture, it is for defendants to make a "compelling" showing that jurisdiction is unreasonable. *Burger King Corp. v. Rudzewicz, supra,* 471 *U.S.* at 477, 105 *S.Ct.* at 2184–85,

85 *L.Ed.*2d at 544. While the interests of the plaintiff and the forum jurisdiction will often justify burdening foreign defendants in their own defense, *Asahi Metal Indus. Co. v. Superior Court of California,* 480 *U.S.* 102, 114, 107 *S.Ct.* 1026, 1033, 94 *L.Ed.*2d 92, 105-06 (1987), a consideration of various factors may show that it would be unfair to confer jurisdiction. Among such factors are:

the burden on defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in efficient resolution of controversies, and the shared interest of the states in furthering fundamental substantive social policies.

[*Waste Management, Inc., supra,* 138 *N.J.* at 122, 649 *A.*2d 379 (*Citing Asahi Metal Indus. Co., supra,* 480 *U.S.* at 113, 107 *S.Ct.* at 1032, 94 *L.Ed.*2d at 104).]

A consideration of such factors leads to the conclusion that jurisdiction is not properly asserted in New Jersey. The contract between plaintiff and Loteria called for the application of Dominican Republic law; it was executed in the Dominican Republic; and plaintiff is a Delaware corporation with its principal place of business in New York. Although plaintiff claims to have an office in New Jersey, in actuality it is simply the place where the president of the plaintiff corporation lives and sometimes conducts business by telephone from his home. Indeed, plaintiff thought so little of its relationship to this state that it failed to obtain a certificate of authority from the Secretary of State before commencing this action. *N.J.S.A.* 14A:13-11(1). Plaintiff corporation was neither a resident of this state nor authorized to do business here at the time the contract was formed or when the cause of action arose. New Jersey simply has no interest in the outcome of the litigation.

The exercise of personal jurisdiction over defendants in this instance is unfair. The judgment of a court lacking personal jurisdiction is void, *Burnham v. Superior Court of California,* 495 *U.S.* 604, 608, 110 *S.Ct.* 2105, 2109, 109 *L.Ed.*2d 631, 638 (1990), and, thus, the default judgment entered against defendants must be vacated. The matter is remanded to the Law Division solely for that purpose.

Reversed and remanded.