**TELESIS MERGERS & ACQUISITIONS, INC., Plaintiff,**

v.

**ATLIS FEDERAL SVCS, INC., National Nurses Service, Inc., Defendants.**

**Civil Action No. 95–4895.**

United States District Court,
D. New Jersey.

Feb. 20, 1996.

Kenneth J. Isaacson, Goldberg, Mufson & Spar, P.A., West Orange, New Jersey, for Plaintiff.

Michael L. Prigoff, Lebson, Prigoff & Baker, Englewood, New Jersey, for Defendants.

## OPINION

LECHNER, District Judge.

This is a breach of contract action by plaintiff Telesis Mergers and Acquisitions, Inc. ("Telesis"), seeking $192,681.00 plus interest, attorneys' fees and costs from defendants Atlis Federal Services, Inc. ("Atlis") and National Nurses Service, Inc. ("NNS") (collectively, the "Defendants"). Removal jurisdiction is alleged pursuant to 28 U.S.C. § 1441(a) ("Section 1441(a)").

Currently before the court is the question whether this matter should be remanded to the Superior Court of New Jersey, Law Division, Bergen County (the "Superior Court") pursuant to 28 U.S.C. § 1447(c) ("Section 1447(c)"). Also before the court is the question whether this matter should be transferred to the United States District Court for the District of Maryland (the "U.S. District Court, Maryland").[1] For the reasons set forth below, this matter is transferred to the U.S. District Court, Maryland.[2]

*Facts*

### A. *Background*

Telesis represents buyers and sellers of home health care and medical staffing businesses. Wittman Declaration, ¶ 2. Telesis is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business in Franklin Lakes, New Jersey. *Id.,* ¶ 8. Atlis is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Rockville, Maryland. Messenheimer Affidavit, ¶ 5. NNS is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Silver Spring, Maryland. *Id.,* ¶ 4. Messenheimer is the president of NNS and the chairman and chief executive officer of Atlis. *Id.,* ¶¶ 1–2. Until 30 June 1995, NNS was a wholly-owned subsidiary of Atlis. *Id.,* ¶ 2; Wittman Declaration, ¶ 2.

On 23 January 1995, Atlis entered into a retention agreement with Telesis (the "Retention Agreement") to locate a buyer for NNS. Wittman Declaration, ¶ 2 (stating both Atlis and NNS retained Telesis); *id.,* Exhibit A (Retention Agreement); Messenheimer Affidavit, ¶ 3 (stating the Retention Agreement was between Telesis and NNS). The Retention Agreement provided that Telesis would have "the sole and exclusive right to offer [NNS] for sale for a period of six months," from 1 February 1995 to 31 July 1995. Wittman Declaration, Exhibit A (Retention Agreement). At the end of that six-month period, Telesis would continue to have the sole and exclusive right to offer NNS for

---

1. At a status conference, held 18 December 1995, counsel for the Defendants indicated his intent to file a motion to transfer this matter to the U.S. District Court, Maryland. The parties were then directed to submit briefs concerning the propriety of transfer.

2. Telesis submitted: Memorandum of Law in Support of Plaintiff's Motion to Remand Removed Action ("Remand Moving Brief"); Declaration of Kenneth J. Isaacson in Support of Motion to Remand Removed Action; Plaintiff's Brief in Opposition to Defendants' Application to Transfer Action to District of Maryland ("Transfer Opposition Brief"); Declaration of Kenneth J. Isaacson in Opposition to Defendants' Application to Transfer Action to District of Maryland; Declaration of Joel Wittman in Opposition to Defendants' Application to Transfer Action to District of Maryland ("Wittman Declaration") attaching exhibits; Plaintiff's Reply Brief in Fur-

ther Opposition to Defendants' Application to Transfer Action to District of Maryland ("Plaintiff's Transfer Reply Brief"); Declaration of Fred Roa in Opposition to Defendants' Application to Transfer Action to District of Maryland ("Roa Declaration"). Fred Roa ("Roa") is the president of Telesis.

Defendants submitted: Memorandum of Law in Opposition to Court's *Sua Sponte* Motion to Remand Removed Action; Affidavit of Keith A. Cunningham ("Cunningham"), CEO of the parent company of Atlis ("Cunningham Affidavit"); Defendants' Memorandum of Law in Support of Motion to Transfer the Within Matter to the United States District Court for the District of Maryland, Southern Division ("Transfer Moving Brief"); Affidavit of Ronald Messenheimer ("Messenheimer"), president of NNS and chairman and CEO of Atlis ("Messenheimer Affidavit"); Certification of Francine R. Foner; a letter-brief in reply.

sale until NNS provided written notice to Telesis to cease such representation. *Id.* The Retention Agreement does not contain a forum selection or choice-of-law clause.

Atlis entered into a stock purchase agreement (the "Purchase Agreement") with Mid–Atlantic Home Health Network ("Mid–Atlantic") on 30 June 1995. Wittman Declaration, ¶ 4 & Exhibit B (Purchase Agreement); Messenheimer Affidavit, ¶¶ 3, 9. Mid–Atlantic is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in Manassas, Virginia. Messenheimer Affidavit, ¶ 9. Telesis was not involved with negotiating the Purchase Agreement, nor did Telesis participate in the closing of the Purchase Agreement, which occurred in Montgomery County, Maryland. Messenheimer Affidavit, ¶ 11. Telesis states that pursuant to the Retention Agreement, NNS and Atlis owe it a commission of $197,681.00, less a $5,000.00 credit, for the Purchase Agreement with Mid–Atlantic. Wittman Declaration, ¶ 5; *id.,* ¶ 3 ("The Retention Agreement granted Telesis the sole and exclusive right to offer NNS for sale ... and further provided that Telesis would be paid a commission if (among other things) '[NNS] is sold or exchanged through or as a result of [Telesis's] efforts or [NNS's] efforts, or the efforts of any other person during the period of this Agreement' ") (quoting Retention Agreement).

Messenheimer states the terms of the Retention Agreement were negotiated at the offices of NNS in Silver Spring, Maryland, with the exception of "a few brief telephone calls [Messenheimer] made to [Telesis] in New Jersey from [Messenheimer's] office in Maryland to finalize minor details...." Messenheimer Affidavit, ¶ 7. Messenheimer states Roa, the president of Telesis, travelled to the offices of NNS in Maryland to negotiate the terms of the Retention Agreement and that "no meetings of the parties were held in New Jersey." *Id.* Messenheimer also states that NNS signed the Retention Agreement at its office in Maryland.[3] *Id.,* ¶ 8.

Roa states Messenheimer initially solicited the assistance of Telesis in locating a purchaser for NNS. Roa Declaration, ¶¶ 2–4. In its submissions regarding transfer, Telesis also argues it performed the Retention Agreement in New Jersey. Wittman states: "Telesis performed its obligations under the Retention Agreement primarily and substantially in New Jersey, through the mails and by telephone." Wittman Declaration, ¶ 11. Roa states the Defendants intended the Retention Agreement to be performed in New Jersey. Roa Declaration, ¶¶ 5–6. In support of that proposition, Roa cites a clause in the Retention Agreement, which states NNS "will reimburse Telesis for *pre-authorized,* reasonable travel expenses incurred in carrying out the terms of [the Retention Agreement]." *Id.,* ¶ 6 (quoting Retention Agreement) (emphasis added in Roa Declaration). Roa states Messenheimer "made it clear that he did not want Telesis personnel traveling from New Jersey to Maryland, or anywhere else, as Telesis sought a purchaser for NNS." *Id.* Roa states Messenheimer insisted on including the above-quoted language in the Retention Agreement because that clause "assured him that if Telesis was to travel on [Defendants'] behalf, [Messenheimer] would know about it ahead of time. Otherwise, at *[Messenheimer's] insistence, Telesis was to conduct its business of (sic) [Defendants'] behalf in New Jersey."* *Id.* (emphasis added in Roa Declaration).

The Retention Agreement opens with the following language:

This will confirm the understanding between Telesis, [NNS] and its shareholders (the "Company")....

Wittman Declaration, Exhibit A (Retention Agreement). Roa states both Atlis and NNS are parties to the Retention Agreement because the passage quoted above includes shareholders of NNS and Atlis is the sole shareholder of NNS. Roa Declaration, ¶ 7. Roa also states that, at the time the Retention Agreement was signed, Messenheimer was president of NNS and chairman and chief executive officer of Atlis. *Id.,* ¶ 8.

---

**3.** Messenheimer signed the Retention Agreement on behalf of NNS. Wittman Declaration, Exhibit A (Retention Agreement).

"[Atlis], as NNS's parent, would be the direct beneficiary of the sale [of NNS]. . . . [I]t was understood that Telesis was rendering service to both NNS and [Atlis], and that both NNS and [Atlis] would owe Telesis a commission if a sale [of NNS] occurred." *Id.; see id.*, ¶¶ 9–10.

The submissions of the parties address the location of witnesses and documents relevant to this breach of contract action. Wittman states that, at trial, Telesis intends to introduce testimony of Wittman, who resides in New York City, and Roa, who resides in Franklin Lakes, New Jersey. Wittman Declaration, ¶ 8. Wittman states Roa expects to testify about the circumstances surrounding the consummation of the Retention Agreement. Wittman also states Roa expects to testify about the services Telesis expected to render to NNS and the calculation of Telesis' compensation under the Retention Agreement. *Id.*, ¶ 9. Wittman expects to offer testimony concerning "the activities Telesis undertook pursuant to the Retention Agreement to carry out its obligations," including its efforts to locate a purchaser for NNS. *Id.*, ¶ 10. "All of the documents upon which Telesis would rely at trial are located at Telesis's offices in Franklin Lakes." *Id.*, ¶ 11.

Messenheimer states he was responsible for negotiating the Retention Agreement on behalf of NNS, subject to the approval of Cunningham. Messenheimer Affidavit, ¶ 12. Messenheimer states he and Cunningham "are principal witnesses" in the instant matter and that they both reside and work in Montgomery County, Maryland. *Id.* Messenheimer also states that, as president of NNS, he is unable to spend a substantial amount of time away from his office in Maryland. *Id.*, ¶ 13. Messenheimer represents that all the business records relevant to the instant matter are located in Maryland, or at the offices of Mid–Atlantic or the parent company of Atlis, located in Virginia and Maryland, respectively. *Id.*, ¶ 14.

Messenheimer states neither NNS nor Atlis has any offices, employees or customers in New Jersey, nor have NNS or Atlis ever transacted business in New Jersey. Messenheimer Affidavit, ¶¶ 4–5. Neither NNS nor Atlis has a telephone listing in New Jersey, nor do either of them advertise in New Jersey. *Id.*, ¶ 6.

### B. *Procedural History*

On 25 August 1995, Telesis filed a complaint (the "Complaint") against Defendants in the Superior Court. Atlis and NNS both joined in the Notice of Removal (the "Notice of Removal"), which was filed on 21 September 1995. Defendants allege that the court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $50,-000.00, exclusive of interest and costs, and the plaintiff and defendants are citizens of different states. Notice of Removal, ¶¶ 3–7. Defendants further allege that "NNS first received a copy of the [C]omplaint without summons by mail at its principal office in Maryland" on 28 August 1995. *Id.*, ¶ 1. Defendants also allege "NNS was purportedly served in the action by certified mail delivery of a summons and [C]omplaint" on 1 September 1995. *Id.*, ¶ 2. The Notice of Removal provides that "Atlis has not been served in this action." *Id.* The final paragraph of the Notice of Removal provides: "This Notice of Removal is being filed with the [Superior Court], by filing same . . . within thirty (30) days after first receipt by any defendant of the [C]omplaint in the action." *Id.*, ¶ 8.

### *Discussion*

### A. *Removal Pursuant to 28 U.S.C. § 1446*

Under the general Federal removal statutes, an action brought in state court can be removed by a defendant to a Federal district court if that Federal court would have had original jurisdiction over the action. Section 1441(a).[4] A defendant seeking to remove a case must file "a notice of removal . . . con-

---

4. Section 1441(a) provides in pertinent part:
    Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may

be removed by the defendant or the defendants, to the district court . . . embracing the place where such action is pending.
28 U.S.C. § 1441(a).

taining a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served." 28 U.S.C. § 1446(a) ("Section 1446(a)").

■ The removing party must show Federal subject matter jurisdiction exists and removal is proper. *Boyer v. Snap–On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990), *cert. denied,* 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991); *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1010 (3d Cir.1987), *cert. dism'd,* 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988); *Moore v. DeBiase,* 766 F.Supp. 1311, 1315 n. 5 (D.N.J.1991); *Mountain Ridge State Bank v. Investor Funding Corp.,* 763 F.Supp. 1282, 1288 (D.N.J.1991).

■ An action removed to Federal court may be remanded to state court pursuant to Section 1447(c) on the basis of any defect in the removal procedure.[5] When confronted with a motion to remand, the removing party has the burden of establishing the propriety of removal. *Boyer,* 913 F.2d at 111; *Steel Valley,* 809 F.2d at 1010; *Moore,* 766 F.Supp. at 1315 n. 5; *Mountain Ridge,* 763 F.Supp. at 1288. Moreover, "removal statutes 'are to be strictly construed against removal and all doubts resolved in favor of remand.'" *Boyer,* 913 F.2d at 111 (quoting *Steel Valley,* 809 F.2d at 1010); *see Moore,* 766 F.Supp. at 1315 n. 5; *Mountain Ridge,* 763 F.Supp. at 1288.

■ Failure to file a notice of removal within the time period provided by the removal statutes is a sufficient basis for remand. *See Foster v. Mutual Fire, Marine & Inland Ins. Co.,* 986 F.2d 48, 50–53 (3d Cir. 1993); *Mountain Ridge,* 763 F.Supp. at 1288.

■ 28 U.S.C. § 1446(b) sets forth the time in which a removal petition must be filed:

The notice of removal of a civil action or proceeding shall be filed within thirty days after receipt by the defendant, *through service or otherwise,* of a copy of the initial pleading setting forth the claim upon which such action or proceeding is based....

28 U.S.C. § 1446(b) (emphasis added). The burden of proof is on the removing party to show removal was timely. *See Boyer,* 913 F.2d at 111; *Steel Valley,* 809 F.2d at 1011.

"As a general matter, courts have construed [the removal statutes] as requiring, in cases involving multiple defendants, that all defendants join in the petition for removal." *McManus v. Glassman's Wynnefield, Inc.,* 710 F.Supp. 1043, 1045 (E.D.Pa.1989); *see Gableman v. Peoria, Decatur & Evansville Ry. Co.,* 179 U.S. 335, 337, 21 S.Ct. 171, 172, 45 L.Ed. 220 (1900); *Chicago, Rock Island & Pac. Ry. Co. v. Martin,* 178 U.S. 245, 248, 20 S.Ct. 854, 855, 44 L.Ed. 1055 (1900); *Lewis v. Rego Co.,* 757 F.2d 66, 68 (3d Cir.1985). The unanimity requirement advances "the congressional purpose of giving deference to a plaintiff's choice of a state forum and of resolving doubts against removal and in favor of remand." *McManus,* 710 F.Supp. at 1045 (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941)).

Telesis argues this matter should be remanded for two reasons. First, Telesis argues that the Notice of Removal fails to allege facts establishing timely removal. Telesis argues that the Notice of Removal does not indicate when Atlis first received a copy of the Complaint, through service or otherwise. Remand Moving Brief at 5; *see Foster,* 986 F.2d at 53–54 (stating thirty-day period begins running when defendant receives a court document which provides "adequate notice of [F]ederal jurisdiction," regardless of when formal service was made). Second, Telesis argues the Complaint should be remanded because Atlis failed to file a copy of the summons served upon it with the Notice of Removal. Remand Moving Brief at 8 (citing Section 1446(a)). An examination of the Notice of Removal indicates the Complaint was timely removed and it complied in all respects with the procedural requirements of Section 1446(a). On these facts, there is no basis to remand the Complaint.

---

**5.** Section 1447(c) provides in pertinent part:

A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under [S]ection 1446(a).

28 U.S.C. § 1447(c).

**B.** *Transfer Pursuant to 28 U.S.C. § 1406(a)*

**1.** *Venue Under 28 U.S.C. § 1391(a)*

■ Pursuant to 28 U.S.C. § 1406(a) ("Section 1406(a)"), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." *Id.* A district court may transfer a case under Section 1406(a) regardless of whether personal jurisdiction exists over the defendants. *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 465–66, 82 S.Ct. 913, 915–16, 8 L.Ed.2d 39 (1962); *see also Carteret Sav. Bank, FA v. Shushan,* 919 F.2d 225, 231 (3d Cir.1990); *United States v. Berkowitz,* 328 F.2d 358, 361 (3d Cir.), *cert. denied,* 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1964); *Database America, Inc. v. Bellsouth Advertising & Publishing Corp.,* 825 F.Supp. 1195, 1206–07 (D.N.J.1993).

Subject matter jurisdiction in the present case is premised on 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $50,000.00 and the parties are of diverse citizenship. Telesis is incorporated in New Jersey and has its principal place of business in Franklin Lakes, New Jersey. 28 U.S.C. § 1332(c)(1); Wittman Declaration, ¶ 8. Atlis is incorporated in Delaware and has its principal place of business in Rockville, Maryland. 28 U.S.C. § 1332(c)(1); Messenheimer Affidavit, ¶ 5. NNS is incorporated in Delaware and has its principal place of business in Silver Spring, Maryland. 28 U.S.C. § 1332(c)(1); Messenheimer Affidavit, ¶ 4.

When subject matter jurisdiction is predicated solely upon diversity of citizenship, venue is governed by 28 U.S.C. § 1391(a), which provides:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Further, 28 U.S.C. § 1391(c) provides that "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

Defendants contend venue is improper in this district because a substantial part of the events giving rise to this dispute did not occur in New Jersey. Transfer Moving Brief at 5, 10–11. Defendants also contend venue is improper because neither general nor specific personal jurisdiction can be asserted over Defendants in this district. *Id.* at 6–10. In addition, Defendants assert that transfer is appropriate under the factors considered in connection with a motion pursuant to 28 U.S.C. § 1404(a). *Id.* at 12–17. Telesis counters by arguing specific jurisdiction exists over the Defendants in New Jersey. Plaintiff's Transfer Reply Brief at 3–10. Telesis also argues venue in this district is proper pursuant to Section 1441(a). *Id.* at 10; Transfer Opposition Brief at 7–9. Finally, Telesis argues the factors considered under 28 U.S.C. § 1404(a) do not warrant transfer of this matter. *Id.* at 4–6, 9–10. Under the personal jurisdiction argument set out by Telesis, venue would be proper in New Jersey under 28 U.S.C. §§ 1391(a)(1) and 1391(c) as well.

**2.** *Venue Pursuant to 28 U.S.C. § 1391(c): Personal Jurisdiction Over Defendants in New Jersey*

A Federal court has jurisdiction over a nonresident defendant to the extent authorized by the law of the state in which that court sits. Fed.R.Civ.P. 4(e); *North Penn Gas Co. v. Corning Natural Gas Corp.,* 897 F.2d 687, 689 (3d Cir.), *cert. denied,* 498 U.S. 847, 111 S.Ct. 133, 112 L.Ed.2d 101 (1990); *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 436 (3d Cir. 1987); *Romero v. Argentinas,* 834 F.Supp.

673, 678 (D.N.J.1993); *Database America,* 825 F.Supp. at 1207; *Apollo Technologies Corp. v. Centrosphere Indus. Corp.,* 805 F.Supp. 1157, 1181 (D.N.J.1992); *American Tel. & Tel. Co. v. MCI Communications Corp.,* 736 F.Supp. 1294, 1301 (D.N.J.1990) (hereinafter *"AT & T"*).

Federal courts sitting in New Jersey apply New Jersey law when interpreting the meaning of·due process for the purpose of determining *in personam* jurisdiction. *Provident Nat'l Bank,* 819 F.2d at 436; *Romero,* 834 F.Supp. at 679; *Database America,* 825 F.Supp. at 1207; *Apollo,* 805 F.Supp. at 1181; *AT & T,* 736 F.Supp. at 1301; *Eason v. Linden Avionics, Inc.,* 706 F.Supp. 311, 319 (D.N.J.1989).

The New Jersey Long Arm Rule permits the assertion of *in personam* jurisdiction as far as is constitutionally permissible under the Fourteenth Amendment. N.J. Court Rule 4:4–4; *Carteret Savings Bank, FA v. Shushan,* 954 F.2d 141, 145 (3d Cir.), *cert. denied,* 506 U.S. 817, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992); *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 284 (3d Cir.), *cert. denied,* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981); *Charles Gendler & Co. v. Telecom Equip. Corp.,* 102 N.J. 460, 469, 508 A.2d 1127 (1986) (citing *Avdel Corp. v. Mecure,* 58 N.J. 264, 268, 277 A.2d 207 (1971)).

Pursuant to the Fourteenth Amendment, personal jurisdiction exists where the plaintiff demonstrates the defendant has sufficient "minimum contacts" with the forum state.

> The first step in a minimum contacts analysis ... is to determine whether the defendant has sufficient contacts with the forum state. The second step is to evaluate those contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"

*Charles Gendler,* 102 N.J. at 472, 508 A.2d 1127 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985)); *see also Lebel v. Everglades Marina, Inc.,* 115 N.J. 317, 322,

558 A.2d 1252 (1989); *Ruetgers–Nease Chem. Co. v. Firemen's Ins.,* 236 N.J.Super. 473, 477, 566 A.2d 227 (1989).

### 3. *Minimum Contacts*

Because Defendants have raised a jurisdictional defense in their answer [6] to the Complaint, Telesis bears the burden of demonstrating Defendants' contacts with New Jersey are sufficient to give the court *in personam* jurisdiction. *Carteret,* 954 F.2d at 146; *North Penn Gas,* 897 F.2d at 689; *Gehling v. St. George's Sch. of Medicine, Ltd.,* 773 F.2d 539, 542 (3d Cir.1985); *Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances,* 723 F.2d 357, 362 (3d Cir.1983); *Romero,* 834 F.Supp. at 679; *Database America,* 825 F.Supp. at 1208; *Apollo,* 805 F.Supp. at 1182. "The plaintiff must sustain its burden of proof through 'sworn affidavits or other competent evidence.'" *North Penn Gas,* 897 F.2d at 689 (quoting *Stranahan Gear Co. v. NL Indus.,* 800 F.2d 53, 58 (3d Cir.1986)).

Telesis must demonstrate either "the particular cause of action sued upon arose from the defendant's activities within the forum state ('specific jurisdiction') or that [Defendants have] 'continuous and systematic' contacts with the forum state ('general jurisdiction')." *Provident Nat'l Bank,* 819 F.2d at 437 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 416, 104 S.Ct. 1868, 1872, 1872–73, 80 L.Ed.2d 404 (1984)); *Romero,* 834 F.Supp. at 679; *Database America,* 825 F.Supp. at 1208; *Apollo,* 805 F.Supp. at 1182; *Giangola v. Walt Disney World Co.,* 753 F.Supp. 148, 154 (D.N.J.1990). "When the cause of action arises out of the defendant's contacts with the forum state, it is more likely that the contacts will subject the defendant to the jurisdiction of the forum than if the cause arises from unrelated contacts." *Charles Gendler,* 102 N.J. at 471, 508 A.2d 1127.

To establish either general or specific jurisdiction, minimum contacts with a state are shaped by purposeful conduct making it reasonable for the defendant to anticipate being haled into court there. *World–*

---

**6.** Answer, filed 11 October 1995, Second Affirmative Defense.

*Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, *reh'g denied*, 358 U.S. 858, 79 S.Ct. 10, 3 L.Ed.2d 92 (1958); *North Penn Gas*, 897 F.2d at 690; *Romero*, 834 F.Supp. at 679; *Database America*, 825 F.Supp. at 1208; *Apollo*, 805 F.Supp. at 1182; *Lebel*, 115 N.J. at 323, 558 A.2d 1252. These contacts must have a basis in "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239. The absence of a "physical presence" in the state is not determinative for jurisdictional purposes. *Burnham v. Superior Court of California*, 495 U.S. 604, 618, 110 S.Ct. 2105, 2114–15, 109 L.Ed.2d 631 (1990) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)); *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184 (same); *Charles Gendler*, 102 N.J. at 469–70, 508 A.2d 1127 (same).

■ In measuring the sufficiency of minimum contacts for *in personam* jurisdiction, a court must focus upon " 'the relationship among the defendant, the forum, and the litigation.' " *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579–80, 53 L.Ed.2d 683 (1977)); *Romero*, 834 F.Supp. at 679; *Database America*, 825 F.Supp. at 1208; *Apollo*, 805 F.Supp. at 1183; *Giangola*, 753 F.Supp. at 155; *Lebel*, 115 N.J. at 323, 558 A.2d 1252. The " 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' " *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183 (citations omitted); *Romero*, 834 F.Supp. at 680; *Database America*, 825 F.Supp. at 1208; *Apollo*, 805 F.Supp. at 1183;

*Giangola*, 753 F.Supp. at 155; *AT & T*, 736 F.Supp. at 1302–03; *Lebel*, 115 N.J. at 323, 558 A.2d 1252.

■ *Burger King* indicates when jurisdiction based upon "purposeful availment" is proper.

> Jurisdiction is proper … where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum state. Thus where the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King*, 471 U.S. at 475–76, 105 S.Ct. at 2183–84 (emphasis in original) (citations omitted); *North Penn Gas*, 897 F.2d at 690; *Database America*, 825 F.Supp. at 1209.

■ Once it is clear that a defendant has minimum contacts with the forum, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *International Shoe*, 326 U.S. at 320, 66 S.Ct. at 162). By exercising the privilege of conducting activities within the forum state, a defendant is put on notice it is subject to suit there. *Id.* at 472, 105 S.Ct. at 2181–82. The fairness of exercising jurisdiction over a defendant results from a reciprocal relationship between the defendant and the forum state. *Eason*, 706 F.Supp. at 320.

### 4. Specific Jurisdiction [7]

■ "Under a specific jurisdiction analysis, in order for the exercise of personal

---

**7.** Telesis has not argued there is general jurisdiction over Defendants in the State of New Jersey, and the facts do not indicate Defendants have continuous and systematic contacts with the state which are unrelated to the subject matter of the

lawsuit. *Provident Nat'l Bank*, 819 F.2d at 437. *Cf. Helicopteros*, 466 U.S. 408, 104 S.Ct. 1868. In *Helicopteros*, the nonresident defendant had solicited helicopter services in the State of Texas, had purchased about 80% of its helicopters

jurisdiction to be proper the cause of action must arise from or be related to" a defendant's contacts with the forum. *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.,* 5 F.3d 28, 32 (3d Cir.1993); *see also North Penn Gas,* 897 F.2d at 690; *Provident Nat'l Bank,* 819 F.2d at 437; *Database America,* 825 F.Supp. at 1212; *Apollo,* 805 F.Supp. at 1182; *Giangola,* 753 F.Supp. at 154; *AT & T,* 736 F.Supp. at 1302. Generally, for a finding of specific *in personam* jurisdiction, the court must examine "the relationship among the defendant, the forum, and the litigation." *Shaffer,* 433 U.S. at 204, 97 S.Ct. at 2570; *see also Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872.

■ Specific jurisdiction requires not only that the cause of action arise from the defendant's forum-related activities, but also that those forum-related activities rise to the level of minimum contacts with the state, such that the defendant should reasonably anticipate being haled into court there. *North Penn Gas,* 897 F.2d at 690 (citing *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567); *Database America,* 825 F.Supp. at 1212; *Apollo,* 805 F.Supp. at 1182; *Giangola,* 753 F.Supp. at 154–55.

■ Once it has been decided minimum contacts exist, the Supreme Court has established "these contacts may by considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *International Shoe,* 326 U.S. at 320, 66 S.Ct. at 162); *see also Charles Gendler,* 102 N.J. at 472, 508 A.2d 1127. These factors include: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184–85 (quoting *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564–65); *see also Charles Gendler,* 102 N.J. at 472, 508 A.2d 1127.

■ In the instant action, Telesis predicates its claim of specific *in personam* jurisdiction over Defendants upon two factors. First, Telesis argues there is personal jurisdiction over the Defendants because they were parties to an agreement "that they knew, and even insisted, that Telesis would perform in New Jersey for them...." Plaintiff's Transfer Reply Brief at 3; *see id.* at 3–7. In addition, Telesis argues the Defendants are subject to *in personam* jurisdiction because Defendants originally solicited its services by contacting Telesis in New Jersey. *Id.* at 6–7. As indicated, the parties dispute whether Atlis was a party to the Retention Agreement, although resolving that dispute is unnecessary to decide the jurisdictional question presented. On the facts presented, Telesis has failed to establish the "purposeful availment" requirement necessary for the maintenance of *in personam* jurisdiction over the Defendants in New Jersey.

Telesis cites *Elizabeth Iron Works, Inc. v. Kevon Constr. Corp.,* 155 N.J.Super. 175, 382 A.2d 648 (1976), *aff'd,* 75 N.J. 332, 382 A.2d 636 (1978) and *Resin Research Lab., Inc. v. Gemini Roller Corp.,* 105 N.J.Super. 401, 252 A.2d 415 (1969) in support of its *in personam* jurisdiction argument.[8] These cases are not

---

there, negotiated its contracts for services there, had spent approximately four million dollars over an eight-year period on parts and accessories purchased from a company in Texas and regularly sent employees to Texas for training. 466 U.S. at 410–11, 104 S.Ct. at 1870–71. The Court held the activities of the defendant were not sufficiently systematic and continuous to confer general jurisdiction. *Id.* at 416, 104 S.Ct. at 1872–73.

**8.** Telesis also cites *New Jersey Auto. Full Ins. Underwriting Ass'n v. Independent Fire Ins. Co.,*

253 N.J.Super. 75, 600 A.2d 1243 (Ch.Div.1991) in support of its specific jurisdiction argument. In that case, the plaintiff insured a party involved in an automobile accident in New Jersey with a Florida resident insured by the defendant. The plaintiff sought reimbursement for first-party personal injury protection benefits it had paid to its insured. *Id.* at 77–78, 600 A.2d 1243. The court determined there was *in personam* jurisdiction over the defendant because it had made a contractual commitment to defend its insured against claims arising from accidents occurring within the forum. "[T]he minimum contacts test

controlling in light of the Supreme Court's decision in *Burger King.* "If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." 471 U.S. at 478, 105 S.Ct. at 2185 (emphasis in original). In holding that there was personal jurisdiction over a non-resident defendant, the *Burger King* Court reasoned:

> Eschewing the option of operating an independent local enterprise, [the defendant] deliberately "reach[ed] out beyond" Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from such affiliation with a nationwide organization. Upon approval, [the defendant] entered into a carefully structured 20–year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida. In light of [the defendant's] voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters, the "quality and nature" of his relationship to the company in Florida can in no sense be viewed as "random," "fortuitous," or "attenuated."

*Id.* at 479–80, 105 S.Ct. at 2186 (citations omitted). Unlike the transaction in *Burger King,* the transaction at issue was for the one-time sale of a business, and did not create a long-term relationship between Defendants and the forum state. At issue in *Burger King* was a twenty-year commitment between the plaintiff and the defendant. *Id.* at 467, 105 S.Ct. at 2179. In this case, the Retention Agreement bound the parties for six months. Wittman Declaration, Exhibit A (Retention Agreement). The only contact Defendants have with New Jersey in connection with this dispute is the initial solicitation of Telesis. The facts do not indicate Defendants entered New Jersey for this purpose. On the other hand, Roa travelled to the offices of NNS and negotiated the terms of the Retention Agreement there. Messen-

heimer Affidavit, ¶ 7. Messenheimer signed the Retention Agreement in Maryland. *Id.,* ¶ 8. On these facts, Defendants did not purposefully avail themselves of the benefits and protection of the laws of the State of New Jersey.

The Supreme Court of New Jersey has set out some parameters for *in personam* jurisdiction arising under contract. *Lebel,* 115 N.J. 317, 558 A.2d 1252. In *Lebel,* a New Jersey resident (the "Buyer") brought suit against a Florida manufacturer (the "Seller"), from which he had purchased a luxury powerboat. The parties had originally met at a boat show in New York City; the Seller never entered New Jersey. Following their meeting in New York, the parties negotiated the sale of the boat over a two-year period. *Id.* at 320, 558 A.2d 1252. During that two-year period, the Buyer received over twenty telephone calls from the Seller, during which the Buyer expressed an interest in using the boat in New Jersey. *Id.* at 320, 324–25, 558 A.2d 1252. The Seller also mailed the contract to the Buyer in New Jersey, and the Buyer signed the contract in New Jersey. *Id.* at 320, 558 A.2d 1252. The Buyer took delivery of the boat in Florida and arranged for a third party to transport it to New Jersey. *Id.*

The *Lebel* court concluded that the Seller purposefully created contacts with the forum, emphasizing that the Seller telephoned the Buyer in New Jersey to negotiate the details of the contract and mailed the contract to the Buyer. On those facts, the *Lebel* court determined the Seller "should reasonably anticipate being hailed into court" in New Jersey. 115 N.J. at 324, 558 A.2d 1252. (quoting *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567). In closing, the court observed that the decision "pushes at the 'outermost limit' of personal jurisdiction." *Id.* at 329, 558 A.2d 1252 (citation omitted).

Telesis finds support in *Elizabeth Iron Works.* Plaintiff's Transfer Reply Brief at 4–6. In that case, a Pennsylvania corporation entered into an agreement with a New

---

requires that an absent defendant must have purposely availed itself of the privilege of conducting business in the forum state." *Id.* at 79, 600 A.2d 1243. Although the *Independent Fire*

holding epitomizes the policy behind the minimum contacts analysis, the facts in that case are not analogous to the instant matter.

Jersey supplier for specially-fabricated steel beams. 155 N.J.Super. at 176, 382 A.2d 648. The defendant-buyer, which had no connection to the State of New Jersey, made an initial telephone inquiry, and the seller prepared a purchase order and sent an employee to the buyer's Pennsylvania project site to obtain the buyer's execution. *Id.* at 177, 382 A.2d 648. The court determined there was *in personam* jurisdiction over the defendant-buyer, relying upon *J.W. Sparks & Co. v. Gallos,* 47 N.J. 295, 303–04, 220 A.2d 673 (1966) (upholding jurisdiction of New York court over New Jersey individual who had ordered stock by telephone from Morristown branch of New York brokerage firm). *Id.* at 178–80, 382 A.2d 648.

Telesis also cites *Gemini Roller* in support of its *in personam* jurisdiction argument. In that case, an out-of-state manufacturer of printing rollers telephoned the plaintiff-seller, stating it was interested in a formula for a vinyl composite. 105 N.J.Super. at 403, 252 A.2d 415. Thereafter, the plaintiff met the defendant in New York City and also telephoned the defendant from Newark, New Jersey. *Id.* After further correspondence between the parties, the plaintiff manufactured a product for the defendant. *Id.* at 404, 252 A.2d 415. The defendant-buyer had no connection with the forum state unrelated to the transaction at issue. *Id.* The court held there was *in personam* jurisdiction over the defendant because it had contacted the plaintiff-seller and it was reasonable to expect that the seller would perform the contract within the state. *Id.* at 404–05, 252 A.2d 415.

*Elizabeth Iron Works* and *Gemini Roller* each concerned the custom manufacture of a product within the forum after an initial contact by a foreign buyer who never entered the forum. Under current case law, however, it is doubtful whether a one-time solicitation of goods or services is sufficient to subject the buyer to *in personam* jurisdiction within the forum. Pursuant to *Burger King,* it is necessary to analyze the business relationship memorialized by a contract; the fact that a contract exists, standing alone, is not determinative.

*In personam* jurisdiction requires an inquiry into "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King,* 471 U.S. at 479, 105 S.Ct. at 2185. Having applied that analysis to this matter, it is unlikely that the Supreme Court of New Jersey would endorse a finding of *in personam* jurisdiction in this matter. As well, it is doubtful that the Supreme Court of New Jersey would endorse *Elizabeth Iron Works* and *Gemini Roller* in the wake of the *Burger King* decision.

In the instant matter, the only contact by the Defendants with the forum was an initial telephone call or letter. Telesis sought the business of Defendants by travelling to Maryland and negotiating and consummating the Retention Agreement in Maryland. The Defendants did not express an interest in pursuing buyers for NNS only within the forum state. Third Circuit case law does not warrant a finding of *in personam* jurisdiction on these facts.

For example, in *Sunbelt,* the plaintiff, a Texas corporation ("Sunbelt"), had entered into two contracts. Sunbelt contracted with Noble, Denton & Associates ("Noble Denton") to design a seafastening plan for loading cargo onto a ship. Sunbelt also contracted with Phillyship, Inc. ("Phillyship"), a Pennsylvania corporation, to execute the plan developed by Noble Denton. Sunbelt sought the contract with Phillyship and negotiated and executed it in Philadelphia. 5 F.3d at 29–30.

Defendant Noble Denton moved to transfer the matter to the United States District Court for the Southern District of Texas. Co-defendant Phillyship objected; it contended it lacked the requisite contacts with the State of Texas. 5 F.3d at 30–31. The Circuit determined that there was no *in personam* jurisdiction in the transferee court over Phillyship, under the Texas long-arm statute, which authorizes *in personam* jurisdiction as far as is constitutionally permissible under the Fourteenth Amendment. *Id.* at 31–32. "[A] nonresident's contracting with a forum resident, without more, is insufficient to establish the requisite 'minimum contacts' required for an exercise of personal jurisdiction

The facts of another of the Circuit's decisions also provide for a useful comparison. In *North Penn Gas*, North Penn Gas Company ("North Penn"), a Pennsylvania entity, entered into two agreements with Corning Natural Gas Corporation ("Corning"), a New York corporation. One agreement provided that North Penn would supply Corning with natural gas, over a twelve month period, according to a fixed rate schedule. Corning agreed to make minimum monthly payments regardless whether it purchased any natural gas; the agreement contained a renewal option. 897 F.2d at 688–89. Under the second agreement, Corning would store natural gas it purchased from third parties at tanks in Pennsylvania owned by North Penn. This agreement also provided for a fixed rate schedule, minimum monthly payments by Corning, and a twelve month period with a renewal option. *Id.* at 689.

Applying the Pennsylvania long-arm statute, which authorizes *in personam* jurisdiction as far as is constitutionally permissible under the Fourteenth Amendment, the Third Circuit held there was *in personam* jurisdiction over Corning in the United States District Court for the Middle District of Pennsylvania. *North Penn Gas*, 897 F.2d at 689–91. The Circuit concluded that the relationship between the parties established sufficient minimum contacts by Corning with the State of Pennsylvania. The facts critical to that decision included a thirty year business relationship between the parties, the reservation of storage space by Corning in Pennsylvania and participation by Corning in Federal Energy Regulatory Commission proceedings on behalf of North Penn. *Id.* at 691. In this case, the Defendants contacted Telesis in New Jersey for information.

Thereafter, the Defendants had no relationship with the State.

Other courts to consider the issue have rejected the notion that due process allows for *in personam* jurisdiction over a one-time foreign-buyer. *See, e.g., Borg–Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1059 (11th Cir.1986) ("mere one-time purchaser of goods from a seller in the forum state cannot be constitutionally subject to the exercise of personal jurisdiction by the courts of the forum state") (citing *Owen of Ga., Inc. v. Blitman*, 462 F.2d 603 (5th Cir. 1972) (declining to exercise *in personam* jurisdiction over defendant buyer of steel fabricated in the seller's forum where contract was negotiated in buyer's state)); *Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309, 310–13 (8th Cir.1982) (declining to exercise *in personam* jurisdiction over defendant buyer of components of railroad cars, where plaintiff-seller visited defendant to negotiate agreement and performance and payment and delivery took place in forum); *Lakeside Bridge & Steel Co. v. Mountain State Constr. Co.*, 597 F.2d 596, 603–04 (7th Cir.1979) (declining exercise of *in personam* jurisdiction over out-of-state buyer of structural steel assemblies on facts similar to those in *Elizabeth Iron Works* and *Gemini Roller*), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980).

Faced with the choice of dismissing this action for lack of personal jurisdiction or transferring the case to Maryland, the "interests of justice" dictate that transfer is appropriate pursuant to Section 1406(a).[9] As the Supreme Court noted in *Goldlawr*, Section 1406(a) exists to "remov[e] whatever obstacles may impede an expeditious and orderly adjudication of cases ... on their merits." 369 U.S. at 466; *see Database America*, 825 F.Supp. at 1215 (same); *IUE AFL–CIO Pension Fund v. Locke Machine Co.*, 726 F.Supp. 561, 572 (D.N.J.1989) (same). Accordingly, this action will be transferred to the U.S. District Court, Maryland, pursuant to Section 1406(a).

9. Both venue and personal jurisdiction appear proper in the U.S. District Court, Maryland, because Defendants have their principal places of business and are subject to personal jurisdiction there. *See* 28 U.S.C. § 1391(a)(1), (c).

*Conclusion*

For the reasons stated, this matter is transferred to the U.S. District Court, Maryland, pursuant to Section 1406(a).